UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ORA CATERING, INC.,<br> Plaintiff<br><br>v.<br><br>NORTHLAND INSURANCE COMPANY,<br>Defendant. | CIVIL NO. 1:14-cv-12618-NMG |

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT, NORTHLAND INSURANCE COMPANY'S RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT

Now comes the Defendant, Ora Catering, Inc. and hereby opposes the Defendant's 12(b)(6)

Motion to Dismiss on the grounds that the defendant, has, inter alia, misrepresented Massachusetts

law governing claims of unfair and deceptive insurance practices and unjust enrichment.  Further,

disposition by a Motion to Dismiss of claims involving the determination of a date of loss by statute

of limitations or Declaratory Judgment is improper under Massachusetts law.  In short, these claims

are not subject to dismissal since the Complaint articulates plausible claims that pass muster under

Fed. R. Civ. P. 12(b)(6) therefore, the Motion should be denied.

## STATEMENT OF FACTS

The following facts plead in the Complaint must be accepted as true for the purpose of an

Fed.R.Civ.P. 12(b)(6) Motion.  The case, sub judice, concerns Defendant Northland Insurance

Company ("Northland")'s wrongful denial of coverage of claims of extra expense to its insured,

Plaintiff, Ora Catering, Inc. ("Plaintiff"), following a fire that destroyed Plaintiff's kosher catering

service facilities at 183 Chestnut Hill Avenue, Brighton, Massachusetts.   The business model

requires food preparation facilities that accommodate preparation of food in observance of religious

rules, and must be inspected by religious officials in order to obtain kosher certification.  Plaintiff's

rented facilities were destroyed as a result of a fire that broke out in the early morning hours of

2/12/2012 in a nearby business.  Specifically, a fire broke out in a nearby Brighton pizza shop, Bocca

Buona, located at 167 Chestnut Hill Avenue, Brighton.  The fire quickly spread to the other nearby

storefronts, including Ora Catering, Inc.  Apparently, the fire was fueled by chemicals stored in S&K

Janitorial, a cleaning supply shop adjacent to Ora Catering, Inc.  Ora Catering Inc.'s rented kitchen

facilities were destroyed in the fire.

At the time of the fire, Ora Catering, Inc. had purchased a Business Loss policy with

Northland Insurance Company under Policy WS126681 covering a period from 11/9/2011 through

11/9/2012.  The policy provided coverage for extra expenses incurred in continuing business

operations at a permanent location. "Extra Expenses" were defined as follows:

> A.      Coverage
> (…)
> 2. Extra Expense
> (…)
> b.   Extra Expense means **_necessary expenses_** you incur during the "period of
> restoration" that **_you would not have incurred if there had been no direct physical
> loss or damage to a property caused by or resulting from a Covered Cause of Loss_**.
> We will pay Extra Expense (other than the expense to repair or replace property) to:
> (1)  **_Avoid or minimize a suspension of business and to continue operations_** at the
> described premises or **_at a replacement premises_** or temporary locations, including
> relocation expenses **_and cost to equip and operate the replacement location_** or
> temporary location.
> (2)      Minimize the "suspension" of business if you cannot continue "operations".
> We will also pay Extra Expense to repair or replace property, but only to the extent it
> reduces the amount of loss that otherwise would have been payable under this
> Coverage Form.

Policy No. WS128681, Commercial Property CP 00300402, at 1(emphasis added).   The restoration

period was defined as "the date when business is resumed at a new **_permanent_** location."  Policy No.

WS128681, Commercial Property CP 00300402, at 8 (emphasis added).  Finally, the policy provided

that benefits were calculated by the expenses necessary to avoid Business Income Loss.

Since the fire destroyed the leased premises and Plaintiff's kosher food preparation facilities,

Ora Catering, Inc. scrambled to expeditiously resume its business of preparing kosher foods and

catering events, by expending its goodwill with local religious organizations to use their temporary

kitchen facilities.  However, these temporary accommodations would not continue indefinitely and

Ora Catering sought a suitable replacement location and began incurring expenses to up-fit the location to meet local code requirements for a kitchen facility.

Following the fire, Ora Catering, Inc.'s corporate secretary worked closely with Northland's claim representative submitting proof of claims documentation during 2012. Ora Catering, Inc. began to seek out new facilities in the surrounding area. Ora Catering, Inc. supplied necessary documentation to support loss of income claims and loss of business equipment. In addition, it meticulously kept records of all expenses associated with bringing the new space up to code with the City of Boston's requirements for a kitchen facility, incurring expenses under the "Extra Expense" provisions of policy WS128681 with Northland Insurance.

Despite having all of the requisite documentation for the construction, Ora Catering, Inc. was advised not to bother submitting these receipts since costs for outfitting a new permanent facility would not be covered by Northland. Northland refused to cover the pay the claims under the Business Loss Portions of the Policy. On 2/28/2013, Northland Insurance Company denied Ora Catering, Inc.'s claims for extra expenses claiming that Ora Catering, Inc., suffered no extra expenses during "restoration period" since it had obtained temporary alternate kitchen space. It defined "restoration period" as ending upon moving to a "new location" omitting the significant word, "permanent" from the description. This is despite that fact that prior to issuing its denial  It also asserted that the expenses were not incurred to continue operations. At no time did it challenge the propriety of the expenses as covered under the policy.

On September 9, 2013 Ora Catering, Inc. issued a demand for payment based upon Northland's unfair and deceptive insurance practices. In particular Ora Catering highlighted that Northland's denial artificially truncated the "Restoration Period," claiming that there was no loss of income, or interruption of business, eliminating any basis for claim. Northland failed to respond to Ora Catering, Inc.'s demand with a reasonable offer of settlement.

3

Specifically, Northland denied Ora Catering, Inc.'s "Extra Expense" coverage based upon an egregious misrepresentation of the policy by omitting key policy language.  Northland's strained and illogical coverage rationale seeks to punish Ora Catering, Inc. for mitigating its damages by continuing its operations at a temporary location.  Despite complying with policy terms to save Northland considerable monies in lost business income claims, Ora Catering, Inc. has been "rewarded" with a meritless denial of its Extra Expenses associated with establishing its new permanent location, post fire loss.

## STANDARD OF REVIEW

Complaints must contain a short, plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2).  A plaintiff is not required to plead every relevant fact, but must plead facts sufficient so that inferences to be drawn are not speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007).  A claim survives a motion to dismiss if it contains sufficient facts, accepted as true, to state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).  Facial plausibility exists when the court has facts upon which it may draw a reasonable inference that the defendant is liable for the misconduct alleged. Id.  In considering the merits of a motion to dismiss the court "may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." Vieria v. First American Title Ins. Co., 668 F. Supp.2d 282, 287 (D. Mass. 2009) (citing Declude, Inc. v. Perry, 593 F. Supp. 2d 290, 294 (D. Mass.2008)). The court must take all factual allegations in the complaint as true and draw all reasonable inferences arising therefrom in the plaintiff's favor.  Id. (citing Phoung Luc v. Wyndham Management Corp., 496 F.3d 85, 87 (1st Cir. 2007)).  If the factual allegations in the complaint suffice to remove the possibility of relief from the realm the realm of mere conjecture, dismissal is not warranted. See Oden v. U.S. Adjusters, Inc.,

2014 WL 900722 (D. Mass. 2014) (Stearns, J.)(citing <u>S.E.C. v. Tambone</u>, 597 F.3d 436, 442 (1st Cir. 2010)).

Where factual disputes exist between the parties concerning the discovery of the gravamen of the complaint, a Motion to Dismiss is inappropriate until the factual issue remains unresolved.  <u>In re Bank of New York Mellon Corp. Forex Transactions Litigation</u>, 921 F. Supp. 2d 56, 91 (S.D.N.Y. 2013) (court would not speculate as to claimholder's knowledge of the to make determination as to when it should have reasonably ascertained harm).

## ARGUMENT

**I.**     **DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF'S ARTICULATED A PLAUSIBLE UNFAIR AND DECEPTIVE INSURANCE PRACTICES CLAIMS HAVE A FOUR YEAR STATUTE OF LIMITATIONS.**

Contrary to Defendant's assertions, Plaintiff's claims of unfair and deceptive insurance practices are subject to a four year statute of limitations.  Massachusetts case law establishes that the four year statute of limitations period applies to claims of unfair and deceptive insurance practices under Massachusetts General Laws ("G.L.") Chapter 93A claims that are grounded in G.L. Chapter 176D ("Chapter 176D").  <u>Schwartz v. Travelers Indemn. Co.</u>, 50 Mass. App. Ct. 672, 675 (2001). Massachusetts courts have reasoned that where a claimant articulates violations of Chapter 176D, they are not merely "duplicative" of ordinary breach of contract claims, and therefore the standard form contract found in G.L. c.175, §99 is inapplicable.  <u>Id.</u>   In the instant case, Plaintiff has articulated several separate violations of Chapter 176D, with factual support, which address the manner in which Northland denied coverage, which are distinct claims of relief apart from Northland's breach of contract.

**A.**     **Massachusetts Case Law Unequivocally Provides a Four Year Statute of Limitations Period for Articulated Unfair and Deceptive Insurance Practice Claims Plead Under General Laws Chapters 93A and 176D.**

In <u>Schwartz v. Travelers Indemn. Co.</u>, 50 Mass. App. Ct. 672 (2001), the Massachusetts

Appeals Court rejected a defendant insurer's contention that the plaintiff's 93A claims were subject

to a statutory two year statute of limitations.  The Appeals Court specifically held that:

> Conduct prohibited in c. 176D is not merely "duplicative" of ordinary breach of
> contract claims based on the policy, although there may be some parallels. Rather, in
> this case, engaging in the conduct prohibited by G.L. c. 176D, and made unfair and
> deceptive by G.L. c. 93A, § 9, creates an action independent from the contract.

<u>Id.</u> at 675.  In <u>Schwartz</u> the plaintiff's assertion of separate statutory violations of the unfair insurance

practices statute sufficed for the purposes of defeating a motion for Summary Judgment.  Moreover,

the Appeals Court specifically held that the statute of limitations set forth in G.L. c.175, §99 did not

govern 93A claims grounded in Chapter 176D.

> We conclude that the statute of limitations set forth in the standard form contract
> found in G.L. c. 175, § 99, must be read as inapplicable to claims brought under G.L.
> c. 93A that are grounded in G.L. c. 176D. The alternate reading would make
> meaningless the specific inclusion of c. 176D actions in c. 260, § 5A, since all claims
> against the insurer, even those under c. 176D, if viewed broadly, can be seen as
> claims brought "by virtue of [the] policy."

<u>Id.</u> at 677.  Consequently, any claim specifically articulating violations of Chapter 176D is subject to

the four year statute of limitations period.

Both the Massachusetts Supreme Judicial Court and the U.S. District Court of Massachusetts

have relied upon the <u>Schwartz</u> decision for the proposition that claims of violations of chapter 93A

and 176D are clearly governed by the 4 year statute of limitation rule.  <u>Lambert v. Fleet Nat. Bank</u>,

449 Mass. 119 (2007) (citing <u>Schwartz</u> for the proposition that 93A claims as a four year statute of

limitations); <u>Oden v. U.S. Adjusters, Inc.</u>, 2014 WL 900722, at 3 fn.6, (D. Mass. 2014) (93A actions

have four year statute of limitations, despite homeowners police identifying two year); <u>Tilton v.</u>

<u>National Union Fire Insurance Co.</u>, 2008 WL 781921 (D. Mass. 2008); <u>Andrew Robinson Intern.,</u>

<u>Inc. v. Hartford Fire Ins. Co.</u>, 533 F. Supp. 2d 218, (D. Mass. 2008) (Gorton, J.) (noting that

<u>Schwartz</u> expounded upon proposition that statutory 93A rights separate from common law contract

rights in a dispute over applicable statute of limitations);  <u>Behn v. Legion Co.</u>, 173 F. Supp.2d 105,

113 (D. Mass. 2001). Consequently, Northland's citation to <u>Nunheimer v. Conteinental Cas. Co.,</u> 68 F. Supp 2d 75 (D. Mass. 1999) as the controlling case law is therefore, inapposite.

<u>Nunheimer</u> was issued on 11/1/1999, and Judge Young did not have the advantage of the Appeals Court's 1/8/2001 decision in <u>Schwartz</u> at that time.  Moreover, in Footnote 7 of the <u>Schwartz</u> decision, the Appeals Court distinguishes <u>Nunheimer,</u> by pointing out that there was no indication that the plaintiff in that case had articulated separate claims of 176D violations, apart from breach of contract.

Northland cavalierly labels Plaintiff's Chapter 176D claims as "boilerplate" and "easily-manufactured," but they are neither.  Plaintiff's Complaint articulates independent bases for violations of the Massachusetts Unfair and Deceptive Insurance Practices Act at paragraphs 66 through 90, which are *not merely duplicative* of its contract claims.  Plaintiff specifically pled facts regarding Northland's violation of G.L.  Chapter 176D, Section 3(9)(a), (f), (g) and (n). The unfair and deceptive practices included Northland's misrepresentation of insurance policy language, its failure to provide a reasonable explanation of its coverage denial, its failure to settle a claim once liability had become reasonably clear and the fact that Plaintiff was forced to commence litigation to obtain amounts due and payable under the policy.  Since these are separate statutory basis for relief, apart from Plaintiff's claims for breach of contract, the <u>Schwartz</u> case provides that the four year statute of limitations period under G.L. c. 260, Section 5A, applies.

**B.**     **Plaintiff has Articulated Plausible Bases for Northland's Violations Of Chapter 176D, §3(9) That Supports a Reasonable Inference of Its Liability To Survive a Motion to Dismiss.**

The Complaint and its attachments present a plausible claim that Northland engaged in unfair and deceptive insurance practices by its bad faith denial of Plaintiff's costs associated with finding and equipping a permanent replacement location.  If an insurer's actions fall within the proscribed activities of the Massachusetts Unfair and Deceptive Trade Practices Statute Chapter 176D, such actions constitute evidence of a breach of General Laws Chapter 93A, Section 11.  See <u>Brown Daltas</u>

& Assocs. V. General Accident Ins. Co., 844 F. Supp. 58, 67 (D. Mass 1994), rev'd on other grounds 49 F.3d 30 (1st Cir. 1994).  Moreover, the standard for evaluating whether conduct by an insurance company suffices for the purposes of Chapter 93A , Section 11, is whether the insurance practice can be found to be immoral, unethical, oppressive, or unscrupulous; or within the bounds of some statutory, common-law or other established concept of unfairness.  Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 8 (D. Mass. 2000) (citing Ellis v. Safety Ins. Co., 41 Mass. App. Ct. 630, 640 (1996)).

Northland's acts of failing to explain its coverage conclusions in policy terms, misrepresenting policy provisions, omitting key language in an applicable definition for coverage, concluding that claimed expenses did not occur within the restoration period, refusing to pay claims when liability was reasonably clear and forcing insureds to litigate to collect sums due and owing, all provide a plausible basis for Northland's liability under General Laws Chapters 93A, §11 and 176D, §3(9).  Plaintiff need only prove one violation of the unfair and deceptive insurance practices act for the purpose of its claim. See Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 562 (2001).

> 1. Northland Failed to Provide a Reasonable Explanation of it Coverage Denial Rooted in Policy Language and Applicable Claim Facts.

As a preliminary matter, Northland's denial of coverage, issued more than a year after the loss, failed to provide a prompt and reasoned explanation for its position based upon the plain meaning of the policy and reasonable expectations of Plaintiff as an insured.  Chapter 176D, Subsection 3(9)(n) requires a prompt explanation rooted in the insurance policy language based upon relevant facts.  The test for a "reasonable explanation" under Chapter 176D, Section 3(9)(n) is the reasonableness of the insurer's decision.  Milazzo v. Sentry Ins., 691 F. Supp. 517, 520 (1987).  Moreover, good faith in rendering a coverage decision requires the insurer to consider the policy holder's "reasonable expectations" Id. (citing Murach v. Massachusetts Bonding and Ins. Co., 339 Mass. 184 (1959) and Bond Brothers v. Robinson, 393 Mass. 546, 551 (1984)).  Northland's denial

of coverage was belated, unreasonable and not interposed in good faith because it did not consider

Plaintiff's reasonable expectation of coverage based upon the ordinary meaning of the policy terms.

Courts construing the language of an insurance policy consider what an objectively

reasonable insured, reading the relevant policy language, would expect to be covered.  Boston Gas

Co. v. Century Indem. Co., 454 Mass. 337, 356 (2009).  Plaintiff's reasonable expectation of

coverage stems from the ordinary meaning attributed to policy terms.  Insurance policy language is

attributed its usual and ordinary meaning under Massachusetts law.  Metropolitan Life Ins. Co. v.

Cotter, 464 Mass. 623, 634 (2013).  The policy's language specifically provided for the costs of

equipping a permanent replacement location.

> We will pay Extra Expense (other than the expense to repair or replace property) to:
> (3) **Avoid or minimize a suspension of business and to continue operations** at the
> described premises or **at a replacement premises** or temporary locations, including
> relocation expenses **and cost to equip and operate the replacement location** or
> temporary location.

CP00300402, at 1. The policy further elucidates that that the restoration period ends the earlier of:

> (1) The date when the property at the described premises should be repaired, rebuilt
> or replace with reasonable speed and similar quality; or
> (2) the date when business is resumed at a new **permanent** location.

CP00300402, at 8.  Read together, the ordinary and plain meaning of policy language suggests that

Northland promised to reimburse plaintiff for relocation expenses and costs to equip the new

permanent location, in order to ensure that the insured's business operation would not be suspended.

Consequently, Plaintiff had a reasonable expectation that payment of premium would entitle it to

costs to equip and operate a replacement location, to ensure continued operation of its business, in

the event of a fire.  Based upon the Complaint and its attachments, documenting expenses submitted

in advance of relocation, a reasonable inference could be drawn that Plaintiff had a legitimate

expectation that the expenses associated with obtaining a permanent replacement location, were

covered under the provisions of the policy.

Moreover, a trier of fact could find that Northland's failure to explain its denial in policy terms was inconsistent with the plain meaning which provided for such expenses, establishing a violation of G.L.  Chapter 176D, Section 3(9)(n) and, therefore, Chapter 93A, §11.  Since reasonableness is the measure of the explanation, Northland's explanation of coverage should accord with the plain meaning of the policy.  See Milazzo v. Sentry Ins., 691 F. Supp. 517, 520 (1987).  However, Northland's denial failed to explain how expenses designed to resume operations at a permanent replacement location, and thus ensure continued business operations, did not constitute necessary expenses designed to avoid a suspension of business operations.  Northland's explanation of its coverage position was limited to a single sentence:

> Based upon our investigation, we have determined that there is no coverage for your extra expense claim, ***because the expenses*** you are claiming for build out costs at a new location ***were not*** extra expenses ***incurred during the "period of restoration"*** that were incurred to avoid or minimize the "suspension" of your business."

Complaint, Exhibit B at 3.

Nowhere in the denial does Northland ever provide a policy based explanation as to why expenses associated with the new replacement location are not covered.  Policy definitions are absent in the substantive explanation of the denial.  "Build out costs" at a new location are not specifically proscribed under the policy.  Moreover there is no explanation why the expenses incurred to establish a new location, for ongoing business operations, do not fall within the "restoration period."  Exhibit C, Page 3 demonstrates that the submitted expenses were incurred within a year of the fire, so it is unclear how there were not in the "restoration period."  Notably absent also is any challenge to the necessity of the costs in detail.  It simply issued a blanket conclusion that they were not "extra expense."  Since Plaintiff lacked any permanent facility to resume operations, the costs incurred in finding and ensuring the replacement location was suitable were costs it would not have incurred, but for the occurrence of the fire and thus, constituted necessary additional expense.

Significantly, other jurisdictions interpreting similar "extra expense" provisions have held that costs associated with ensuring that a replacement location was suitable, could conceivably be covered by an extra expense provision. See F.P. Woll & Co. v. Valiant Ins. Co., 226 F. Supp. 2d 688, 692 (E.D. Penn. 2002) (refusing to enter summary judgment that costs associated with construction, legal and architectural fees associated with finding substitute offices for company damaged by fire as not covered).  In F.P. Woll & Co. v. Valiant Ins. Co., 226 F. Supp. 2d 688, 692 (E.D. Penn. 2002), the Eastern District of Pennsylvania in interpreting similar provisions, refused to hold that costs associated with construction, legal and architectural fees did no occur within the "restoration period," and therefore, not "extra expenses" under the policy.  In Doherty v. Nationwide Mut. Ins. Co., 2006 WL 2468679 (E.D. Penn. 2006), the U.S. District Court for the Eastern District of Pennsylvania held that expenses associated with continuing the rental operations at the building where the fire occurred could constitute "extra expense" under the policy as they were necessary to continue business operations until the restoration period ended.  In Midwest Regional Allergy, Asthma, Arthritis & Osteoporosis Center, P.C. v. Cincinnati Ins. 2013 WL 4400823  (W.D. Mo. 2013), the court found that the plaintiff's costs associated with relocating its MRI machines to a new facility were covered under the policy's extra expense provisions. Id.  Consequently, in the instant case, Plaintiff had a reasonable expectation that expenses incurred for the purpose of continuing operations at a new permanent location would be covered.

Northland was obligated under Chapter 176D, Section 3(9)(n) to provide, promptly, a reasonable explanation of the basis in the insurance policy in relation to the facts.  See Mass. Gen. Law ch. 176D, §3(9)(n).  Yet its coverage conclusions lack any reasoning based upon the specific language of the policy and instead labels them as "build out costs," without further explanation. An insurer that fails to provide an explanation as to the basis for its denial of coverage constitutes a violation of Chapter 176D, §3(9)(n).  See Whitney v. Continental Ins. Co., 595 F. Supp. 939, 946 (D. Mass. 1984)(holding insurer's failure to provide explanation under homeowners policy sufficient for

purposes of summary judgment).  Moreover, Northland did not demonstrate good faith in the

coverage denial since it is evident that it did not consider the reasonable expectations of its insured.

See Milazzo, 691 F. Supp. at 520.  Northland even concedes that its denial letter "could have been

written better."  Regardless, it had a statutory obligation to explain its position within the language of

the policy and the reasonable expectations created by its ordinary meaning.  See Trustees of Tufts

University v. Commercial Union Ins. Co., 415 Mass. 844, 848 (1993) (courts interpret scope of

insurance coverage based upon what the expectations of an objectively reasonable insured reading

the relevant policy language).  In its Motion to Dismiss page, 14, Northland's acknowledgement that

its explanation may have been wanting and that it could have been written better.  Based upon its

Complaint, attachments, and Northland's seeming  acknowledgement of deficiencies in its denial

letter, Plaintiff has made a plausible claim for violation of Chapter 176D, Section 3(9)(n) sufficient to

escape a 12(b)(6) Motion to Dismiss.

> 2. Northland Misrepresented Policy Provisions in its Coverage Denial In violation
> of Chapter 176D, Section 3(9)(a)

Plaintiff has also made a plausible claim for Northland's misrepresentation of policy

language and G.L. c. 176D, § 3(9)(a).  Northland, in it is justification for denying extra expenses,

significantly omitted key language in its express interpretation of the "restoration period" to justify

its bad faith denial of coverage.  Misrepresentation of fact or policy provisions constitutes evidence

of an unfair insurance practice under Chapter 176D, Section 3(9)(a) and therefore Chapter 93A,

Section 11. See Brown, 884 F. Supp. at 67.  On page one of the 2/28/2013 denial letter Northland

defined the restoration period as follows:

> During the period of restoration, ***which ends the day you move into the new location***,
> you were able to conduct and maintain your business at no additional costs.

However, the policy specifically defined the restoration period as being measured by the date that

Plaintiff moved into its permanent facility.  Northland's redefinition of "Restoration Period" as "the

day you move into the new location" facilitated its disclaimer of Plaintiff's extra expenses permitting

it to deny any restoration period at all, based upon the absence of any other additional costs (presumably rental expense). There were no rental expenses because Plaintiff expended its accumulated goodwill to obtain temporary kitchen facilities.

Since unfair and deceptive practices can be outlined in other statutory schemes, reference to other similar cases, including an insurer's misrepresentation in ERISA cases can elucidate unfair and deceptive practices in terms of disclosing policy terms to insurers. Specifically, an insurer that misquoted policy terms or language in the context of a denied ERISA claim for insurance benefits has been found to be arbitrary and capricious under the ERISA standards. Harrison v. Prudential Ins. Co. of America, 543 F. Supp. 2d 411 (E.D. Penn. 2008) (entering summary judgment where claimant proved claim administrator misrepresented and misquoted policy terms). Finding an insurer's actions "arbitrary and capricious" mirrors the reasonable standard under Chapter 176D, Section 3(9)(n). Consequently, Northland's act of misrepresenting policy language clearly falls within the "penumbra" of prohibited activities found to be unfair in similar statutes. Moreover, in Massachusetts, conduct undertaken as leverage to destroy the rights of another party to an agreement which jeopardizes the interests of subscribers in preserving their coverage has a coercive quality that, with the other facts, warrants a finding of unfair acts or practices. See Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995). Northland's redefinition of policy terms to avoid coverage arises to this kind of conduct.

Compounding Northland's misrepresentation of the "Restoration Period," it failed to provide a reasonable explanation as to why the expenses were incurred outside the restoration period. Significantly, Plaintiff had submitted dated expenses for the costs associated with equipping its new, permanent location for use as a kosher kitchen. All of the expenses were incurred prior to Plaintiff's occupation of the replacement premises and therefore, within the "restoration period". Yet Northland provided no explanation as to why they did not. It only concluded that "***the expenses*** you are

claiming for build out costs at a new location ***were not*** extra expenses ***incurred during the "period***

***of restoration."***

Northland never claimed that Plaintiff should have obtained a replacement location of similar

quality by a particular date.  Absent such a rationale, there was no basis for Northland to exclude

expenses incurred based upon their date.  Northland's failure to articulate this in its denial was

unreasonable and a "failure to provide promptly a reasonable explanation of the basis in the

insurance policy in relation to the facts."  <u>See</u> G.L. ch. 176D, §3(9)(n).   Consequently, Northland

cannot assert that it lawfully denied the claim.  It is unclear how the policy language supported its

decision to deny the expenses as unrelated to equipping Plaintiff's new permanent facility.

Consequently, Plaintiff has alleged a plausible claim for unfair and deceptive insurance practices

based upon Northland's misrepresentation of policy language for the purpose of wrongfully denying

coverage in violation of Chapter 176D, 3(9)(a) , warranting denial of Defendant's Motion to Dismiss.

   3. <u>Plaintiff has Plead that Northland made False Claim that No Extra Expenses</u>
     <u>Were Incurred During The Restoration period.</u>

In addition to deliberately omitting key policy language and misinterpreting its own policy,

Northland's denial suggested that Plaintiff did not proffer any claims for "Extra Expenses," despite

receiving dated and itemized expenses for the costs necessary to equip and prepare the new

permanent facility.  Nowhere in the denial did Northland attack the propriety of the costs as "Extra

Expenses."  Northland was obligated, in good faith, to have presented all defenses to coverage, under

penalty of waiver.  <u>See</u> <u>RLI Ins. Co. v. Santos</u>, 746 F. Supp. 2d 255 (D. Mass. 2010) (prejudice to

insured may provide basis for waiver of additional unspecified coverage defense).

Significantly, Northland's denial suggested that Plaintiff's continued operations at temporary

facilities, eliminated any restoration period at all, rendering the policy language's distinction between

temporary and permanent locations, meaningless.   Since Section 2.b's definition of "Extra

Expenses" includes those expenses <u>necessary</u> in relocating to a new permanent location, this includes

Plaintiff's costs of outfitting the new <u>permanent</u> location.  Consequently, Northland's denial of the existence of extra expenses, which were essential in obtaining a new permanent location, was wrongful and a violation of Chapter 176D.  No reasonable interpretation of the policy supports Northland's claim that there were no additional costs to resume operations at a permanent facility, since Plaintiff was able to continue its operations at a temporary location.  Under this reasoning, no insured would ever incur any extra expense in obtaining a permanent location, rendering such promises illusory.  Since Northland premised its denial upon the omission of the term "permanent" to support its denial of coverage, Northland materially misrepresented the terms of the subject policy and committed a separate violation of Chapter 176D, Section 3(9)(a).

4. <u>Plaintiff has Alleged that Northland failed to settle a claim when liability had become reasonably clear forcing Plaintiff to File Suit.</u>

Plaintiff has also made a plausible claim that Northland breached its duty to settle the claim once liability had become reasonably clear under G.L.  Chapter 176D, Section 3(9)(f) and as a consequence, forced Plaintiff to litigate to recover under the policy.  The test for whether liability had become reasonably clear is "an objective standard of inquiry into the facts and the applicable law."  <u>See</u> <u>Demeo v. State Farm Mut. Auto. Ins. Co.</u>, 38 Mass. App. Ct. 955, 956 (1995); <u>Behn v. Legion Ins. Co.</u>, 173 F. Supp. 2d 105, 113 (D. Mass 2001).  In the instant case, Northland's position that the costs to procure a suitable replacement location were not "extra expense" under the subject policy, ran contrary to the policy's plain meaning.  The test for reasonably clear liability is "whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff."  <u>Demeo v. State Farm Mutual Auto. Ins. Co.</u>, 38 Mass.App.Ct. 955, 956 (1995).  As discussed above, a policy holder would have the reasonable expectation that expenses incurred to continue business operations at permanent relocation facilities would be covered.  Consequently, liability was reasonably clear for the purposes

of Northland issuing payment under the claim and it refused to do so, constituted an unfair and

deceptive insurance practice.

II.     **PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT SURVIVE BECAUSE THE EXISTENCE OF A CONTRACT DOES NOT BAR AN ALTERNATE CLAIM WITH ITS DISTINCT SIX YEAR STATUTE OF LIMITATIONS PERIOD.**

Plaintiff's Count III, Unjust Enrichment, is not subject to Rule 12(b)(6) dismissal because

Plaintiff was entitled to plead alternative and inconsistent legal theories in its Complaint, despite the

existence of a contract.  In fact, this Court has previously denied an insurer's motion to dismiss an

insured's unjust enrichment claim on the basis of an alleged applicable contract.  In Vieira v. First

American Title Ins. Co., 668 F. Supp. 2d 282 (2009).  Justice Woodlock refused to dismiss plaintiff's

claims for unjust enrichment based upon the defendant's claim that a valid contract would preclude

such recovery.  Vieira v. First American Title Ins. Co., 668 F. Supp. 2d 282, 294 (D. Mass. 2009)

Citing Limone v. U.S.,579 F.3d 79, 93 (1st Cir. 2009), Justice Woodlock held that Fed. R. Civ. P.

(8)(d) permitted a plaintiff to plead "alternate and even inconsistent legal theories, such as breach of

contract and unjust enrichment, even if Plaintiffs only can recover under one of these theories."

Moreover he stated that exercise of that right did not debar them from an independent review of each

set of claims. Id. (citing Barrett v. H & R Block, Inc., 652 F. Supp. 2d 104, 112 (D. Mass.2009)

(denying motion to dismiss because "Rule 8 permits plaintiffs to plead alternative theories of

liability" even when plaintiffs may only recover under one of these theories); Zamzam Telecard, Inc.

v. New Jersey's Best Phonecards, 514 F. Supp. 2d 136, 139 (D. Mass.2007) (denying motion to

dismiss unjust enrichment claim even where pleading contained a breach of contract claim).  Justice

Woodlock apparently read and considered the controlling precedent of Zarum v. Brass Mill Materials

Corp., 334 Mass. 81, 134 N.E.2d 141, 143 (1956), which formed the basis for Defendant's cited

cases, and determined that Fed. R. Civ. P. 8(d) permitted the claims to be considered independently.

In fact this Court has a history of denying motions to dismiss unjust enrichment claims based upon

the alternate pleading theory. Computer Sales Int'l, Inc. v. Lycos, Inc., No. Civ.A.05-10017, 2005

WL 3307507, at 7 (D. Mass. Dec. 6, 2005)(motion to dismiss unjust enrichment claim

denied); Bunge Oils, Inc. v. M & F Mktg. Dev., LLC, No. Civ.A.03-11559-GAO, 2005 WL 629489,

at *3 (D. Mass. Mar. 15, 2005)(despite fact that case had same allegations that support the contract-

based claims but states an alternative equitable theory of recovery for unjust enrichment, if the

contract claims prove insufficient"); Frontier Mgmt. Co., Inc. v. Balboa Ins. Co., 658 F. Supp. 987,

994 (D. Mass. 1986) (denying motion to dismiss unjust enrichment claim).  Consequently, Plaintiff's

claim survives as an alternate theory of recovery under the contract, subject to its own statute of

limitations. Moreover, Plaintiff's claim for unjust enrichment, as an alternate theory of recover, is

subject to a six-year statute of limitations period.  See Micromuse, Inc. v. Micromuse, PLC, 304 F.

Supp. 2d 202, 209 (D. Mass. 2004).

      Plaintiff has pled a plausible claim for unjust enrichment.  The theory of unjust enrichment

provides recovery if a defendant has received money which in equity and good conscience belongs to

another requiring it to be restored to the plaintiff.  National Shawmut Bank of Boston v. Fidelity Mut.

Life Ins. Co., 318 Mass. 142, 146-150 (1945). For the purpose of an unjust enrichment claim, a party

being saved from an expense is a benefit. Massachusetts Eye and Ear Infirmary v. QLT

Phototherapeutics, Inc., 552 F.3d 47, 66 (1st Cir. 2009) (citing 41 C.J.S. Implied Contracts § 9 for

proposition that 'benefit' for purposes of an unjust enrichment claim is any form of advantage that

has a measurable value, including the advantage of being saved from an expense or loss."")).

Moreover, when a defendant has received a benefit that is significantly greater than the plaintiff's

loss, and justice so requires, "the defendant may be under a duty to give the plaintiff the amount by

which he has been enriched."  Id.  In the instant case, Plaintiff paid premiums under the insurance

policy and took measures to mitigate its expenses under the provisions of the contract, by expending

its goodwill with two religious organizations, from 2/12/12 to 6/30/2013 to obtain temporary kosher

food preparation facilities.  The resultant savings to Northland by Plaintiff's expenditure of its good

will was $253,460.  Plaintiff had expended its good will with the understanding that it would

facilitate its claims for the loss.  Instead of acknowledging Plaintiff's savings, Northland perverted

these mitigation efforts into justification of its denial of extra expense, alleging Plaintiff suffered "no

additional costs" for maintaining business operations.  Since unjust enrichment is grounded in public

policy designed to prevent one party from being enriched at the expense of another, Northland should

not be permitted to stand behind its denial, while also enjoying $253,460 in avoided rental payments.

Based upon these facts, Plaintiff has a plausible claim for unjust enrichment and the six-year statute

of limitations also applies to unjust enrichment claims based on the same underlying facts.

Micromuse, 304 F. Supp. 2d at 209.

### III.   DECLARATORY JUDGMENTS UNDER MASSACHUSETTS LAW SHALL NOT BE DISMISSED ABSENT A DECLARATION FROM THE COURT.

Plaintiff has asserted in Count V a claim for declaratory judgment regarding the rights and

liabilities of the parties under Policy No. WS128681 insofar as it seeks a determination if its

submitted expenses qualify for the purpose of "extra expense" under the subject policy.

Massachusetts cases have held that a court shall not dismiss a petition for declaratory judgment, once

it determines that it has jurisdiction.  See Snell v. Department of Correction, 458 Mass. 1021, 1022

(2011).  Consequently, the Plaintiff's Complaint cannot be dismissed with prejudice as requested by

Defendant Northland, since "when declaratory relief is sought, the Court should not dismiss the case

for any reason, but rather should make a declaration."  See Mac Eachern v. City of Boston, 9 Mass.

App. Ct. 907, 908 (1980). Consequently, dismissal as requested by Defendant Northland is not

appropriate under the circumstances, since the rights and liabilities of the parties have yet to be

determined by the Court.

### IV.   NORTHLAND'S PARTIAL PAYMENT OF PLAINTIFF'S CLAIMS UNDER WS128681 WAIVED ITS STATUTE OF LIMITATIONS DEFENSE.

Northland's partial payment of claims under Policy No WS128681in connection with the fire

loss of 2/12/2012 constituted a waiver of the statute of limitations defense it now seeks to impose.

An insurer can waive the statute of limitations defense, even if it runs in its favor, by issuing payment

of a claim.  See Lumbermens Mut. Cas. Co. v. Y.C.N. Transp. Co., Inc., 46 Mass.App.Ct. 209, 214-15, rev den'd 429 Mass. 1104, (1999).  In Lumbermens Mutual Casualty Company vs. Y.C.N. Transportation Company, the Massachusetts Appeals Court held that an automobile insurer was obligated to pay the remaining portions of a claim for defense and indemnity, after it had made a partial payment for defense, reasoning that the insurer had waived the statute of limitations defense by making payment.  Similarly, Northland's partial payment of Plaintiff's claims related to the loss including loss of equipment, waived its statute of limitations defense related to the remainder of the claims for "extra expense."  Consequently, Northland has waived its right to invoke the statute of limitations by partial payment.

## V.   WHEN THE STATUTE OF LIMITATIONS FOR CONTRACT ACTIONS UNDER THE POLICY BEGINS TO RUN IS A QUESTION OF FACT AND THEREFORE DISMISSAL IS INAPPROPRIATE.

The date upon which the loss accrued, and the statute of limitations implications thereof, is an issue of fact that is not suited for disposition by a Fed. Civ. P. 12(b)(6) motion to dismiss since it requires a finding of fact.  Significantly, the subject policy does not define the occurrence of a loss under the terms of the policy.  Under Massachusetts law, the general rule is that a contract action accrues at the time the contract is breached. Prior to the insurer's denial, "there is no justiciable controversy" which would, in theory, permit the statute of limitations for bringing an action begin to run before the action can be brought. See Berkshire Mut. Ins. Co. v. Burbank, 422 Mass. 659, 661 (1996).  In the typical scenario, the limitations period therefore, begins to rune from the time in claims for a breach of an insurance contract, the statute of limitations would typically run from the date that the insurer disclaimed its obligations.  See Lumbermens Mut. Cas. Co., 46 Mass.App.Ct. at 214; Travelers Ins. Co. v. Royal Ins. Co., 65 Mass.App.Ct. 1115, 2 (2006).

However in a fire loss scenario, where the parties dispute the actual date of loss for the purposes of calculating the statute of limitations, disposition as a matter of law is inappropriate. Commerce Ins. Co. v. Sentry Ins., 1998 WL 1181776 (Mass. Super. 1998) (Bohn, J.).  In Commerce

Insurance Company v. Sentry Insurance, the Massachusetts Superior Court refused to enter summary judgment based upon the claimed expiration of the statute of limitations because the parties disputed the "date of loss." Id. Specifically, there was a material dispute as to actual date that the damage caused by the fire was fully assessed. Id. In the instant case, the date that the full scope of damage caused by the fire and the assessed need to relocate to a replacement facility is issue of disputed fact not suitable for disposition by dispositive motion. The question when  a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact. Mulhern v. Philadelphia Indem. Ins. Co., 802  F. Supp. 2d 317, 321-322 (D. Mass. 2011) (citing Riley v. Presnell, 409 Mass. 239, 240 (1991). Furthermore, even a case involving undisputed facts, judgment that a reasonable person 'should have known' something is one of those conclusions that most courts leave to juries where, as here, reasonable juries could differ. Id. (citing Parker v. Worcester Ins. Co., 247 F.3d 1, 5 (1st Cir. 2001)).  Consequently, Defendant's Motion to Dismiss is improper at this time as a dispositive issue of fact remains unresolved. . In re Bank of New York Mellon Corp. Forex Transactions Litigation, 921 F. Supp. 2d 56, 91 (S.D.N.Y. 2013) (court would not speculate as to claimholder's knowledge of the to make determination as to when it should have reasonably ascertained harm).

## CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss should be denied and the Plaintiff should be permitted to proceed on its meritorious claims.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Massachusetts United State District Court Local Rule 7.1(D), Plaintiff requests an oral argument on Defendant's Motion to Dismiss which would effectively dismiss its entire claim.

WHEREFORE, Plaintiff, Ora Catering, Inc. respectfully requests that Defendant Northland Insurance Company's Rule 12(b)(6) Motion to Dismiss the Complaint BE DENIED.

Respectfully submitted,
PLAINTIFF,
ORA CATERING, INC.,
By Its Attorney,


/s/ Peter J. Riordan
Peter J. Riordan, Esquire
BBO # 658851
priordan@js-law.com
JANTZEN & ASSOCIATES, P.C.
4 Liberty Square - Seventh Floor
Boston, MA  02109
617 457-1919

## CERTIFICATE OF SERVICE

I hereby certify that, on August 14, 2014, this document will be filed through the ECF system and be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  In addition, a copy will be sent by U.S. mail, postage prepaid, to counsel for defendant identified below at the following address:

Wystan M. Ackerman, Esquire
Jonathan E. Small, Esquire
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

/s/ Peter J. Riordan
Peter J. Riordan, Esquire
BBO # 658851
priordan@js-law.com
JANTZEN & ASSOCIATES, P.C.
4 Liberty Square - Seventh Floor
Boston, MA  02109
617 457-1919