**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| ORA CATERING, INC., ) | |
| ) | |
|       Plaintiff, ) | |
| ) | |
|       v. ) | Civil Action No. |
| ) | 14-12618-NMG |
| NORTHLAND INSURANCE CO., ) | |
| ) | |
|       Defendant. ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

**MEMORANDUM & ORDER**

GORTON, J.

This case arises out of a dispute over the coverage of a commercial insurance policy issued to Ora Catering, Inc. ("Ora" or "plaintiff") by Northland Insurance Co. ("Northland" or "defendant"). Ora contends that Northland wrongfully denied coverage of a submitted claim for "extra expenses" incurred after its rental kitchen facilities were destroyed by fire. Plaintiff had sought reimbursement for the costs associated with equipping and bringing its replacement kitchen facilities up to code. It brought both common law and statutory claims based on defendant's alleged misconduct. Pending before the Court is Northland's motion to dismiss all claims. For the reasons that follow, that motion will be allowed.

## I.  Background

### A.  Factual Background

Ora is a Boston-based kosher food catering company. Northland is a Connecticut corporation with a principal place of business in St. Paul, Minnesota.  Northland issued a commercial property insurance policy ("the policy") to Ora that provided coverage for Ora's business personal property (i.e., kitchen equipment), food spoilage, business income losses and extra expense losses.  The term policy was in effect from November 9, 2011 to November 9, 2012.

On February 12, 2012, plaintiff's rented kitchen facilities in Brighton, Massachusetts were destroyed in a large fire.  The fire started in a neighboring restaurant and damaged plaintiff's facilities after being fueled by chemicals stored in an adjacent cleaning supply store.

In the immediate aftermath of the fire, Ora managed to secure kosher kitchen facilities at two local religious congregations.  The use of those two temporary kitchen facilities enabled plaintiff to continue to operate its kosher catering business.  Ora utilized the facilities at (1) Young Israel of Brookline from February, 2012 to August, 2013 and (2) Congregation Chai Odom in Brighton from February, 2012 to July, 2013.  Neither congregation charged plaintiff for the use of its kitchen facilities.

Sometime during 2012 or early 2013, Ora eventually located a desirable permanent replacement facility and incurred $95,631 of expenses to equip and "up-fit" the location to meet local city code requirements for a kitchen facility. Plaintiff operated out of the two temporary locations while the new permanent facility was being equipped and brought up to code. As such, it managed to avoid any interruption to its business after the fire.

Ora subsequently submitted proof of claim documentation to Northland. Northland paid Ora $39,517 in order to cover damages related to its business personal property and corresponding food spoilage costs. Plaintiff's complaint does not allege that the amount paid by defendant failed to cover that portion of its claim.

Additionally, as part of its claim, Ora submitted documentation that detailed the more than $95,631 in expenses that it incurred to equip and "up-fit" its new permanent facility. Plaintiff contends that those expenses are compensable as "extra expenses" under its policy with defendant. Northland declined, however, to cover Ora's claim for the expenses it incurred that related to the improvements made to its permanent replacement kitchen facility. Accordingly, in a four-page letter dated February 28, 2013, defendant denied the "extra expenses" portion of plaintiff's claim.

In its denial of coverage letter, Northland quoted verbatim from a portion of the "Business Income (And Extra Expense) Coverage Form" included in Ora's policy. Defendant first reproduced the policy language regarding extra expenses, which read in relevant part as follows:

> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> > (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and cost to equip and operate the replacement location or temporary location.
> >
> > (2) Minimize the "suspension" of business if you cannot continue "operations".
>
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

Northland's denial letter then reproduced the policy language regarding the "period of restoration" referred to in the extra expenses section. The relevant "period of restoration" was defined as beginning "72 hours after the time of direct physical loss" and ended on "[t]he date when business is resumed at a new permanent location."

Northland's letter explained its denial of Ora's extra expenses claim as follows:

> As a result of the fire damage you have made a claim for damages that you considered to be extra expenses under your loss of income coverage. During the period of restoration, which ends the day you move into the new [permanent] location, you were able to conduct and maintain your business at no additional costs. We have never received a claim for loss of income or for extra expenses that were incurred to continue your business. The only expenses presented were for build out expenses at a new location. These expenses were not incurred to continue your operation.

As such, defendant concluded that plaintiff's claimed expenses were not covered because they

> were not extra expenses incurred during the "period of restoration" that were incurred to avoid or minimize the "suspension" of [plaintiff's] business.

In September, 2013, Ora sent Northland a Chapter 93A demand letter requesting payment of the $95,631 in incurred expenses. In that letter Ora contended that Northland's denial of its claim (1) was "based upon an egregious misrepresentation of the policy," (2) "omitted key policy language" and (3) constituted unfair and deceptive insurance practices. Defendant failed to respond with an offer of settlement.

**B.   Procedural History**

Based on defendant's purported misconduct, plaintiff subsequently filed suit in the Massachusetts Superior Court for Suffolk County on April 25, 2014, alleging both common law and statutory violations in a six-count complaint. Plaintiff's

complaint raises common law claims against defendant for breach of contract (Count I), breach of implied contract (Count II), unjust enrichment (Count III) and the right to recompense of mitigated expenses under the insurance policy (Count IV). Plaintiff also seeks a declaratory judgment against defendant (Count V) and raises a statutory claim against defendant for its alleged violation of both M.G.L. c. 93A, § 11 and M.G.L. c. 176D, § 3(9) (Count VI).

Defendant timely removed the case to this Court in June, 2014, based on complete diversity of the parties. Defendant then filed a motion to dismiss plaintiff's suit for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) in July, 2014.

## II. **Defendant's Motion to Dismiss**

Northland argues that Ora's entire suit is time-barred under the statutorily mandated two-year statute of limitations provided for in the insurance policy. It contends that the statute of limitations began to run on the date of the fire that destroyed plaintiff's rental kitchen facilities and that Ora has provided no justification for tolling that two-year period. As such, Ora's failure to file suit on or before February 12, 2014 forecloses its claims.

Alternatively, Northland asserts that Ora's quasi-contract claims (Counts II-IV) are barred by the existence of the written

insurance policy.  Moreover, defendant argues that Count VI of
plaintiff's complaint fails to plead a plausible violation of
M.G.L. c. 93A or c. 176D.  Defendant maintains that its denial
of coverage was a correct application of the insurance policy or
was at least based on a good faith, plausible interpretation of
the policy.

In opposition to Northland's motion, Ora contends that the
statute of limitations did not begin to run until Northland
denied its insurance claim for extra expenses in February, 2013.
Further, Ora argues that Northland waived its statute of
limitations defense by making payments to Ora for the losses
that it did cover.

Furthermore, Ora maintains that its claim detailing alleged
violations of Chapters 93A and 176D is subject to a separate
four-year statute of limitations that overrides the two-year
limitations period identified in the policy and that it
articulated plausible bases for violations of those Chapters by
defendant.

### A.    Legal Standard

To survive a motion to dismiss for failure to state a claim
under Fed. R. Civ. P. 12(b)(6), a complaint must contain
"sufficient factual matter" to state a claim for relief that is
actionable as a matter of law and "plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A district court assesses "the sufficiency of the complaint's factual allegations in two steps." Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013). First, a court ignores conclusory allegations mirroring legal standards. Id. Second, it accepts the remaining factual allegations as true and draws all reasonable inferences in the plaintiff's favor, thereafter deciding if the plaintiff would be entitled to relief. Id. If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet v. Justices of the Trial Court, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). A complaint, however, does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) motion to dismiss, a court "may properly consider only [those] facts and documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). Exhibits attached to the complaint are part of the pleadings and can therefore be considered. Id. (citing Fed. R. Civ. P. 10(c)).

**B. Statute of Limitations**

**1. Legal Standard**

A defendant can raise the statute of limitations as an affirmative defense in a Rule 12(b)(6) motion to dismiss, so long as the underlying factual basis for the defense is "clear on the face of the plaintiff's pleadings." Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009) (citation omitted). As the First Circuit Court of Appeals recently noted

> [w]hen the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period, a [] court should grant a 12(b)(6) motion by the defense if the complaint (and any other properly considered documents) "fails to 'sketch a factual predicate' that would" provide a basis for tolling the statute of limitations.

Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014) (quoting Trans-Speck Truck, 524 F.3d at 320)).

**2. Count I: Breach of Contract**

In Massachusetts, all commercial property insurance policies that insure against loss or damage by fire must adhere to a standard format. M.G.L. c. 175, § 99. The mandatory language to be included in all policies provides a two-year statute of limitations. Id. Accordingly, plaintiff's insurance policy with defendant contained the following provision:

> [n]o suit or action against [defendant] for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in

-9-

> [Massachusetts] unless commenced within two years from
> the time the loss occurred.

Ora thus had two years to commence the suit after "the loss
occurred."

Neither M.G.L. c. 175, § 99 nor the policy itself defines
when the "loss" occurs. Ora urges the Court to find that its
"loss" occurred in February, 2013 when defendant denied it
insurance benefits for extra expenses. Courts have, however,
routinely interpreted the "loss" referenced in the statute and
reproduced verbatim in plaintiff's policy as occurring on the
day that the fire or other covered incident causes the damage to
a plaintiff's property. See, e.g., Nunheimer v. Cont'l Ins. Co.,
68 F. Supp. 2d 75, 77-78 (D. Mass. 1999) (collecting cases and
concluding that "the 'loss' which starts the [accrual] of the
statute of limitations is the incident [i.e., the fire] which
gives rise to the claim for insurance benefits"); DiMaio Family
Pizza & Luncheonette v. Charter Oak Fire Ins. Co., 448 F.3d 460,
462 (1st Cir. 2006) ("[a]ppellants do not dispute the fact that
they failed to file suit within two years of the date of the
fire"); J. & T. Enters., Inc. v. Liberty Mut. Ins. Co., 428
N.E.2d 131, 132-33 (Mass. 1981).

The Court accordingly finds that plaintiff's "loss"
occurred on the day of the fire, February 12, 2012. Plaintiff

had until February 12, 2014 to file suit against defendant for breach of the insurance contract.[1]

Plaintiff's contention that defendant somehow waived its statute of limitations defense by paying plaintiff for certain losses is unavailing.  Northland paid Ora $39,517 for covered personal business property and food spoilage losses.  Northland, however, rejected Ora's claim as to "extra expenses" and specifically made clear in its denial letter to Ora that it did "not waive any of the rights that [it] may have under the terms of the insurance policy or at law."  An insurer does not waive its right to raise a statute of limitations defense merely by making payment for undisputed losses while specifically reserving its rights as to all disputed losses. See Merrimack Mut. Fire Ins. v. Nonaka, 606 N.E.2d 904, 906 (Mass. 1993) ("Waiver consists of the insurer's voluntary or intentional relinquishment of a known right.").  The undoubtedly desirable goal of prompt insurance payments to insureds would be undermined if every insurer which paid out on undisputed losses was deemed to have waived its right to raise affirmative defenses as to all disputed losses.

Plaintiff had until February 12, 2014, two years after the fire occurred, to bring a claim against defendant for breach of

---

[1] Plaintiff has made no argument that the statute of limitations period should have been tolled for any period of time.

the insurance contract.  Plaintiff failed to do so.  Therefore,
defendant's motion to dismiss Count I will be allowed.

### 3. Counts II-V: Equitable Claims and Declaratory Judgment

Ora's claims for breach of implied contract (Count II),
unjust enrichment (Count III), the right to recompense of
mitigated expenses under the insurance policy (Count IV) and a
declaratory judgment (Count V) all face similar timeliness
problems.

The insurance policy clearly and broadly states that "[n]o
suit or action against [defendant] for the recovery of <u>any claim
by virtue of this policy</u> shall be sustained" unless it is
brought within the two-year statute of limitations period.
(emphasis added).  Counts II through V of plaintiff's complaint
undoubtedly are claims made "by virtue of [plaintiff's] policy"
with defendant.  <u>See</u> <u>J. & T. Enters.</u>, 428 N.E.2d at 133.  These
claims are therefore also subject to the two-year limitation
period.  <u>See</u> <u>Gilbert</u> v. <u>City of Cambridge</u>, 932 F.2d 51, 57-58
(1st Cir. 1991) ("where legal and equitable claims coexist,
equitable remedies will be withheld if an applicable statute of
limitations bars the concurrent legal remedy"); <u>Gray Excavation,
Inc.</u> v. <u>Acadia Ins. Co.</u>, No. 0602026C, 2008 WL 496645, at *4
(Mass. Super. Ct. Jan. 29, 2008).  Because plaintiff failed to

bring those additional claims within the two-year period,
plaintiff is time-barred from doing so now.

Accordingly, for substantially the same reasons the Court
allowed defendant's motion to dismiss with respect to Count I,
defendant's motion with respect to Counts II through V will be
allowed.

### 4. Count VI: Violations of Chapter 93A and Chapter 176D

Northland contends that the insurance policy's two-year
statute of limitations also time-bars Ora's claim for any
alleged violations of Chapter 93A and Chapter 176D.  Northland
maintains that the broad language included in both M.G.L. c.
175, § 99 and the insurance policy subjects any conceivable
claim surrounding Ora's policy to a two-year statute of
limitations.  Ora disagrees and asserts that the reasoning of a
2001 Massachusetts Appeals Court decision warrants applying a
four-year statute of limitations to Count VI.

As previously discussed, M.G.L. c. 175, § 99 mandates a
two-year statute of limitations for all insurance policies
covering fire loss.  M.G.L. c. 260, § 5A, however, establishes a
four-year statute of limitations for consumer protection actions
brought for, inter alia, violations of Chapters 93A and 176D.

The remedy to the apparent conflict between the two-year
statute of limitations set out in both M.G.L. c. 175, § 99 and

plaintiff's policy and the four-year statute of limitations for violations of the subject Chapters is elucidated in Schwartz v. Travelers Indem. Co., 740 N.E.2d 1039, 1042-44 (Mass. App. Ct. 2001). In Schwartz, the court held that the general statute of limitations for all fire insurance policies, set forth in M.G.L. c. 175, § 99, should give way to the specific statute of limitations period established for claims alleging violations of Chapters 93A and 176D. Id. at 1044 (noting that alternate reading would render "meaningless" the specific inclusion of Chapter 176D actions in M.G.L. c. 260, § 5A). Cf. Nunheimer, 68 F. Supp. 2d at 79-80 (holding that two-year statute of limitations applied because plaintiff's claims under Chapters 93A and 176D are undoubtedly claims that exist "by virtue of the policy" and were therefore time-barred). Conduct prohibited by Chapter 176D is "not merely duplicative of ordinary breach of contract claims based on the [insurance] policy." Schwartz, 740 N.E.2d at 1042-43. Instead,

> engaging in the conduct prohibited by G.L. c. 176D, [which is] made unfair and deceptive by G.L. c. 93A [], creates an action independent from the contract.

Id. at 1043.

The Court finds that defendant's alleged violations of Chapters 93A and 176D are, in fact, claims that are predicated on conduct independent from plaintiff's other claims. Plaintiff alleges misconduct by defendant that is not merely a repackaging

of its breach of contract claim under "the guise of a c. 93A violation." See id. at 1043 n.7 (distinguishing result in Nunheimer).  Rather, plaintiff alleges misconduct by defendant that might "support activity, independent of a claim under the policy, [that is] violative of G.L. c. 176D." Id.  For example, plaintiff contends that, inter alia, defendant misrepresented policy provisions in its denial letter.  Such misconduct, if true, would enable plaintiff to bring suit against defendant for actions independent of any breach of contract claim.  As such, Count VI of plaintiff's complaint is subject to the four-year statute of limitations established for all Chapter 93A and Chapter 176D claims, which plaintiff satisfied here.

Accordingly, defendant's motion to dismiss Count VI on statute of limitations grounds will be denied.

### C.    Sufficiency of Factual Allegations for Chapter 93A Claim (Count VI)

Although the Court finds that Count VI of Ora's claim is timely filed, Ora must still plead sufficient factual allegations to state a claim for relief.

Ora alleges that Northland engaged in unfair insurance claim settlement practices, thereby violating both M.G.L. c. 176D, § 3(9) and M.G.L. c. 93A, § 11 (Count VI).  Specifically, plaintiff contends that defendant: (1) misrepresented pertinent facts and insurance policy provisions relating to its coverage,

-15-

(2) failed to effectuate prompt, fair and equitable settlement of the claim after liability had become reasonably clear, (3) compelled plaintiff to institute litigation to recover amounts due under the policy and (4) failed to provide a reasonable explanation of the basis for the denial of its claim for extra expenses. See M.G.L. c. 176D, § 3(9)(a), (f), (g), (n).

Defendant moves to dismiss Count VI for failure to allege sufficient facts to state a claim.

### 1. Legal Standard

Chapter 93A prohibits those engaged in trade or commerce from employing "unfair methods of competition and unfair or deceptive acts or practices" and authorizes businesses to sue one another for engaging in such practices. M.G.L. c. 93A, §§ 2, 11. Chapter 176D, § 3(9) defines a variety of unfair claim settlement practices for insurance companies. M.G.L. c. 176D, § 3(9)(a)-(n). A violation of Chapter 176D is not automatically a violation of Chapter 93A, § 11. Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 9 (1st Cir. 2000). Instead, violations of Chapter 176D may serve as evidence of unfair conduct that could be found to violate Chapter 93A, § 11. See id.; Kiewit Constr. Co. v. Westchester Fire Ins. Co., 878 F. Supp. 298, 302 (D. Mass. 1995).

In the context of disputes among businesses, where both parties are sophisticated commercial players, the "objectionable

-16-

conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce." Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979)); see Madan v. Royal Indemnity Co., 532 N.E.2d 1214, 1217 n.7 (Mass. App. Ct. 1989) (citations omitted) (noting higher standard of unfairness under § 11).  Thus, in order to prove a violation of Chapter 93A, plaintiff must show that defendant's conduct fell within "the penumbra" of some "established concept of unfairness" or was "immoral, unethical, oppressive or unscrupulous."  See Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (citations and internal quotations omitted).

### 2.  Application

Not surprisingly, the parties have a fundamental disagreement over the interpretation of provisions in the insurance policy relating to "extra expenses."

Plaintiff contends that defendant violated Chapters 176D and 93A through its failure to give a reasonable explanation for its denial of the extra expenses portion of plaintiff's claim. Moreover, plaintiff alleges that defendant blatantly misrepresented the terms of the policy and omitted key policy language.  Plaintiff maintains that a plain reading of the policy would have warranted coverage for the expenses it

incurred for relocation and the corresponding costs to equip and up-fit its new permanent location.

Plaintiff reads the policy as categorically covering all necessary expenses incurred up until the time at which it moved into its new permanent location.  It thus maintains that the claimed expenses for the new permanent location were incurred during the "period of restoration" to help avoid a suspension of its business.  Such a reading of the policy would include coverage for the expenses plaintiff incurred to equip and up-fit its new location even while it continued to operate at its two temporary locations.

Defendant, on the other hand, reads the policy more narrowly.  It contends that extra expenses are owed only in the event that an insured is at risk for not being able to conduct and maintain its business.  Because plaintiff managed to find temporary kitchen facilities for which it was not charged, there were necessarily no "extra expenses" incurred to "avoid or minimize" the suspension of its business.  Under defendant's rationale, equipping and up-fitting the new permanent facility would have qualified as "extra expenses" only if plaintiff was unable to continue its business in the meantime or was in fact charged for the use of either temporary facility.  Under such circumstances, "extra expenses" would have been compensable.

The Court need not determine which party has the correct contract interpretation.  Even if defendant's interpretation of the policy was found to be incorrect, it would not result in a violation of Chapter 93A so long as defendant made a good faith determination to deny coverage. Pediatricians, Inc. v. Provident Life & Acc. Ins. Co., 965 F.2d 1164, 1173 (1st Cir. 1992) ("[l]iability under c. 176D and 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous").

The question, therefore, is whether the defendant's reading of the contract, and its explanation for its denial, was somehow so "immoral, unethical, oppressive or unscrupulous" as to demonstrate a violation of Chapter 93A. See Boyle, 369 F.3d at 15.  The Court concludes that defendant's interpretation of the insurance policy in the denial letter does not rise to that standard.  Typically, situations where the parties have a "genuine difference of opinion" are merely "ordinary disputes" that lack conduct sufficient to implicate Chapter 93A. Duclersaint v. Fed. Nat'l Mortg. Ass'n, 696 N.E.2d 536, 540 (Mass. 1998) ("a good faith dispute as to whether money is owed ... is not the stuff of which a c. 93A claim is made").

Importantly, defendant did not omit any key policy language in bad faith.  In fact, defendant used more than an entire page

-19-

of its denial letter to quote verbatim from all portions of the insurance policy relevant to plaintiff's claim for extra expenses.

Furthermore, defendant provided a good faith, reasonable explanation for its decision. Milazzo v. Sentry Ins., 691 F. Supp. 517, 520 (D. Mass. 1987).  In its denial letter, defendant referenced the fact that plaintiff was able to continue its business at the two temporary locations at no additional cost. Therefore, the expenses for plaintiff's build out at its new location "were not incurred to continue [its] operation" and cannot be considered under the policy to be "extra expenses." Defendant admits that it could have gone into more detail in the denial letter to support the reasons for its decision. Nevertheless, the Court finds that defendant's four-page denial letter adequately explained the basis for its decision and did not misrepresent any policy terms in doing so.  Defendant's interpretation of the policy's language and its succinct explanation of its rationale for the denial of extra expenses can hardly be characterized as inherently unfair or deceptive.

Ultimately, this case appears to involve "an ordinary contract dispute" between sophisticated commercial players. Zurich Am. Ins. Co. v. Watts Regulator Co., 796 F. Supp. 2d 240, 245 (D. Mass. 2011); see Kobayashi v. Orio Ventures, Inc., 678 N.E.2d 180, 189 (Mass. App. Ct. 1997) (citation omitted).

Plaintiff alleges insufficient facts from which a finder of fact could reasonably find that defendant acted in bad faith or violated an "established conception of unfairness" that would implicate Chapter 93A. Accordingly, Count VI will be dismissed.

### ORDER

In accordance with the foregoing, the motion to dismiss of defendant Northland Insurance Co. (Docket No. 6) is **ALLOWED.** **So ordered.**

 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 5, 2014